Thank you, Your Honors, and may it please the Court, David Goldman representing the United States of America in the Weber case. I would like to reserve three minutes for rebuttal. I will just start exactly where Judge Koh and my colleague left off, which is the text of Title III. So there were a few questions raised, but I'm going to start with the question of alteration under Section 302. So, as my colleague was saying, we have to look at the verbs in Section 302 in context. You consider them all as a group in the company in which they keep. And yes, Your Honor is correct that the statute in Fisher also had a different mens rea requirement. That wasn't the sole basis on which the Court described those verbs. I believe, although I might be wrong that it's page 490 or 491 of the Fisher opinion, the Court says that those verbs, by their very nature, relate to the destruction or making unavailable as evidence particular records. So I don't think that the particular mens rea differential distinguishes that case. And also, as my colleague was alluding to, we have to consider the willfully mens rea here. So, Judge Koh, even if you're right that— Okay, but what tells me that I have to interpret a statute that says whoever corruptly alters with the intent to impair the object's integrity is—I have to interpret that exactly the same as whoever willfully alters any record or paper? So two points. The first would be that in the statute under Fisher, we would be required to prove the corruption and that intent to destroy the document for that purpose. That's not quite the same burden that we would carry here. So that mens rea has its own work to do under the burden of proof. But the second is that you're just selecting the word alter, but we have to look at the other verbs, and they have destroy, steal, and utilize.  So tell me if—we'll get to the state as to how the state keeps its records, but let's just go back to Oregon. And Oregon makes a brand-new voter list with no Social Security driver's license date of birth every month. And I apologize I didn't ask what they did with their previous versions, but this is all electronic. So why would that not be a destruction if that replaces—with every other electronic document, right? It saves on top of whatever you're editing. Why wouldn't that be a destruction or an alteration? Well, it wouldn't be a destruction or alteration as that term is used in the statute because we have to look at these statutes next to one each other. I mean, my friends talk about construing statutes harmoniously, but they stop doing so when they get to this one. We look at HAVA and its requirements that you make these updates, and it wouldn't make any sense to then read that as somehow being inconsistent with retaining and preserving the documents under the CRA. Tell me, what's the textual basis in Title III that a state can alter the information in the SVRL but can't alter the material submitted by the voters? What tells me that the statute allows me to make that distinction? Where's the language? You said text. Let's go to text. You tell me where in 2701, where in 2702 does it say, well, if it's a list, go ahead, go for it. But if it's the application submitted by the voter, no way, no alteration, no destruction, no mutilation. Where does it tell me that I can make that distinction? Well, so two points to that. The first is I would go to the text in HAVA because we do have to construe the statutes together. But the second is that I don't think we're saying that if you made a notation on an applicant's registration form that you wouldn't be required to preserve that. So if you imagine in the 1960s- That tells me that Title III draws the distinction that I can alter and destroy an SVRL, but I cannot do that for a registration application submitted by a voter. Your Honor, the Title III doesn't draw that distinction because it's not an alteration at all. If we look at the 1960s and we have these applications coming in and a county registrar wrote W, B, to connote whether the person was white or black, I mean, they would need to preserve that document. Maybe that would be considered alteration, but it would certainly still itself be a record under Section 301 that they would be required to keep. And I'm sorry, I didn't hear. What was the original document that you said that they write a W or B on? My hypothetical would be an application to register. All right. And that would fully satisfy 2701. It would be a record in paper. It would come into the election official's possession relating to an application. So even if it had W or B, it would still be completely squarely within the statute. 100%. So not only would it actually be an application, which is listed, but even if it was a notation, like a sticky note on top of it that said, I will deny because the person is the wrong race, that is undoubtedly a record relating to a registration. So it falls squarely within those terms. I think that one thing that we can get sidelined by is looking at the list of records and saying, well, those aren't, as my friends say, internally generated. But the text of the statute requires all records relating to those documents. So it's necessarily broader than the specific documents given as examples themselves. So from what I understand, you're relying on tax analysts to say that if it's created by the state, it's just as much as if it's submitted by the voter. We're using tax analysts as an example to rebut the idea that there's something inherently non-common sense about using the phrase comes into possession to refer to documents that someone has generated themselves. It's obviously addressing a different context, but the point is that Justice Marshall clearly didn't think there was anything crazy about using that language. But I don't see anything in tax analysts, which is discussing the FOIA statute, that has the language of records and papers which come into his possession. So I guess for me, tax analysts, if it wants to talk about created and received, they're just talking about the definition of record within FOIA, which is... So, Your Honor, I don't... I don't see it having any of the requirements that 2701 has. No, there's no question. Tax analyst is analyzing a different statute. Our point with tax analysts was fairly modest, which is that what we've been told is that comes into possession can't mean something that I've created myself. And tax analysts, in discussing papers that they fall under FOIA either because they were received from an outside source or because the agency created them, in discussing both of those statutes, Justice Marshall used the phrase comes into possession, but again, it's just about language.  And I'm sorry to interrupt you, but I'm going to have to go back to your own OLC memo. It says, receive is used to mean to come into possession of, get, acquire, or the like from any source outside of oneself. Webster's New International Dictionary, 1958, at the time the CRA was enacted. Yes. So even the OLC is saying come into possession means you're acquiring something from a source outside yourself. No, Your Honor, and thank you for bringing that up. I wanted to address that. I mean, if the definition that you read says comes into possession and then specifies from an outside source, if comes into possession inherently only meant from an outside source, the dictionary wouldn't then need to specify it's coming from an outside source. So receive is- It's defining receive. It's defining receive. It's defining receive. And receive is narrower than comes into possession. So it specifies, comes into possession in the context in which it's from an outside source. And so does the, to go back to one of my colleague's questions in the last case, does the United States have any objection to our consolidating these cases? No, Your Honor, not at all. Thank you. Yeah. Another point that Your Honor raised was about custodian versus possession. If you look at Section 301, the text discusses the possibility that state law will require that a particular officer take custody of the documents. So there's really nothing strange about Section 303 than directing the Attorney General to direct any demands to the person who has taken custody and is therefore by definition the custodian. Well, but let's talk about that. How is a computerized electronic record, how is that delivered to another officer? How is that retained at a specified place? How is that deposited with such custodian? Sure. So I don't know the exact specifics about the internals of California's system, but I don't think that that is really the relevant question because Secretary Weber has never contested that she is the custodian of this document. And what Section 301 requires is that the moment that an election official does come into possession, whether that be because they gain access to a particular system or it's sent to them or it's delivered on their desk, that is when the duty to retain and preserve kicks in. So that's what that language is doing. Can I get a clarification? You originally had requested the voter registration applications submitted to the state of California from December 23 to July of 2025. But my sense on appeal is that you're no longer seeking the actual applications. Is that correct? That is not what we're arguing about on appeal. That's correct. That's not what you're requesting now? Or you are still requesting it, you're just not appealing the denial of it? That is that we have not raised that argument here. That's correct. Okay. So then what is the information that you're seeking in the SVRL that wouldn't be available in the voter registration application that would help you with enforcing Title III of the Civil Rights Act? Well, Title III is an investigative tool. So what we're enforcing, as we said in our letters, is NBRA and HAVA. Those deal with list maintenance. So just getting the applications wouldn't tell us very much about the state's list maintenance process. That's why we need that list. Do you need it to check for non-citizens? That's listed throughout the OLC memo. It's in the executive order. Yeah. So I'm happy to address that. Thank you. So that is one of several things we're checking for. We are checking for any basis on which the state should be retaining or not retaining people on their lists. So that includes change in residence. That includes death. And yes, that includes non-citizenship. I do want to clarify something about the OLC memo. So is the goal then of the department then to then challenge individual registered voters based on whatever citizenship status, felony status, change of address? It's not to challenge them so much as it is to communicate to the states. I think there would be two steps here. The first would be to communicate to the states, hey, we've noticed some problems in your list because there's a whole host of people who shouldn't be there. Obviously, as they point out, lists aren't perfect, and we realize that. But if we find widespread problems, we might want to communicate that because we recognize that it is their job in the first instance to maintain their lists. So that's how I would characterize what that is. Now, if for some reason they were totally unwilling to look at that or they said, we realize that, we realize there are tons of problems and we don't care, well, then maybe we look at an enforcement action under the NBRA or HABA. We are very, very far from that at this point. With regard to the OLC memo, I do think it's important to note that that memo comes in the context of us asking for advice as to what to do if we discover evidence of further wrongdoing. Sorry, may I ask you one more question? Of course. Does the state have to keep the separate copies of its SVRL, assuming they're updated on a regular basis, which they're required to do under HABA? Does it have to keep every iteration? No. Why not? We never suggest that because we think that that is part of the retention and preservation. Therefore, we think that that's perfectly consistent with their duties under Section 301. To destroy them as they update them. We do not think that they're destroying them at all. I think that it's important to use that language precisely. Let's say they are. Is that a violation of Title III or not? Well, no, because I wouldn't characterize it as a destruction. If you're talking about updating them with regard to HABA, then- Say a deletion of the file. A deletion of the file because you've generated a new one. Be replaced with an updated one, then no, I don't think that would qualify under Section 302. To be sure I understand the United States' position, if routinely a state updates files, and as Judge Koh says, in the normal course of dealing with electronically held records, you could have Line 17, which is updated, and today's Line 17 doesn't look the same as yesterday's Line 17, and that there's no way for the state to be able to recreate what Line 17 said yesterday because they have a new entry in Line 17, or Line 17's been deleted because the person has moved or died or something like that. The United States' position is that that is not in violation of any statute that it's aware of.  Now, I do think that there may be, in many cases, the availability through metadata to see what the changes were made. Oh, there may well be, but my hypothetical- Yes, under your hypothetical, if they- My 20th century hypothetical. So long as they are complying with their obligation under HABA to keep it up to date, that is consistent with Section 301. I mean, normally, when we look at criminal statutes, we don't read them broadly to try to encapsulate as much conduct as we possibly can and invalidate other statutes. But even aside from the criminal statute- Yes. With regard to 2701 and the 22-month period, what I've described in my limited hypothetical would be entirely consistent with the United States' view of the way 2701 and its 22 months operates. Basically, just being that they're updating it with-  Yes. Okay. They're following HABA. And I think, importantly, I think I tried to mention this earlier, but willfully is not whether you intend to do something, it's whether you intend to do something with improper intent to violate the law. And I can't imagine how we would argue or how a court would hold that that's what's happened when they're complying with their duties under HABA. But my question didn't necessarily go to the criminal statute, it went to the requirements under 2701, which talks about shall retain and preserve. Yes, Your Honor. And I apologize. I was trying to get back to a point- That's fine. Your answer was, to my question, was based, putting aside the whatever extra requirements of mens rea there are as to the actual requirements of 2701. Yes, Your Honor. All right. We'll give you your whole three minutes for rebuttal. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. Helen Hong for Secretary of State Weber in the state of California. So as Judge Mendoza observed this morning in the earlier argument, there are many paths to affirmance of the district court's dismissal of the federal government's complaint. And I'd like to focus on one that hasn't been the focus of argument this morning that I think is a narrow, independent path that is sufficient to affirm. And that is that Title III does not authorize a records demand for the purpose of conducting NVRA list maintenance oversight. So whatever the scope of Title III may be, what records fall under it, what sorts of investigations are properly conducted pursuant to Title III, what Title III does not cover is what the federal government has put into its demands as the purpose for its records demand, and that is conducting NVRA list maintenance oversight. And that follows as a matter of the NVRA and HAVA's text, its structure, history, and then background constitutional principles that best states and not the federal government with primary authority over elections. I'll start with the text of the NVRA and HAVA. Can I just rephrase what you said, similar to the question I asked earlier, which of the basis, it seems to me that the state of California is arguing that basis and purpose, that essentially they haven't provided a basis and purpose consistent with Title III. Is that what you're saying? It is, Your Honor. It's a species of that argument. So I think there's the hypothetical that Judge Bennett provided this morning about Alabama and whether the Attorney General could ever seek the state voter rolls if there was reason to believe that they would reveal something about discrimination. This argument really is about the NVRA and HAVA taking out of Title III the Attorney General's authority to request any documents related to list maintenance at all. And that follows because of the way the NVRA and HAVA are structured. So the NVRA, as Your Honors know, they argue, they argue that they're investigating voter fraud and that allows them to do this. Your Honor, with respect, they did not. So at 2ER-267 and 2ER-264, that's the July 10th and August 13th letters, the federal government indicated that its purpose for seeking these demands was in order to determine whether California's, quote, list maintenance program complies with the NVRA, end quote. And with respect, Your Honor, that is not a proper purpose under Title III because of the way that the NVRA and HAVA were structured. So as I mentioned, what Congress did, and this was recognized by this court's decision, recent decision in PILF versus NAGO, was to create a sort of comprehensive balance in the NVRA and HAVA itself. That balanced the need for oversight and transparency while also ensuring that eligible voters would not be removed from the roles. And the way that Congress saw that oversight should be conducted is through the records provision in the NVRA itself. And that records provision, as NAGO decided, governs programmatic documents, those documents that concern the implementation of programs and activities concerning the official voter lists, but not the voter list. So what happens here in a day or a week when the federal government comes forward and says, you know what, here's your basis and purpose, let's try to contort ourselves into fitting into the correct basis and purpose, why isn't, how does that solve the problem? Your Honor, it would solve the problem in a few respects. One is, you know, the demand and purpose that the federal government has provided here is NVRA compliance. We always saw a reason to question the sincerity of the federal government's representations in that regard, and I think the OLC opinion now confirms that it had hidden one of its true motives. But second, you know, we will take that purpose and demand letter as it comes, but if it contains something like the immigration enforcement purpose that has been disclosed in the OLC opinion, that's just plainly unlawful under the scope of Title III itself, as well as, you know, the limits to what DHS and HSI can request under this court's precedents. But turning back to the NVRA and HAVA itself, not only is there a records demand provision, but there's also provisions that dictate who should have access to the list. So AB 3 subsection A1A Romanet 5 provides that the state's chief election official shall make the voter registration computerized list available to local election officials. Congress did not say that any federal government official or the Attorney General should have similar access. The HAVA and NVRA both contain civil enforcement mechanisms. They allow the Attorney General to bring them. There's criminal penalties associated with willful violations of either statute, and there's an administrative complaint procedure that's also built into the HAVA itself. All of those taken together reflect Congress's judgment about who should obtain documents in order to conduct and what documents may be obtained in order to conduct NVRA list maintenance obligations. And under the NVRA and HAVA, that is records that pertain to programmatic activities, as NAGO now establishes, and through public and private oversight. Can I ask you a question? So your argument, is it all riding on NAGO? Because that's in conflict with the First Circuit decision, and they've stayed the mandate to see if, you know, the Supreme Court wants to review that. I'm just wondering, are you saying everything rides on NAGO? It doesn't. I mean, yes and no, Your Honor. I think that NAGO really does confirm that the state voter rolls are not properly disclosed for NVRA list maintenance purposes. But even accepting that NAGO itself. I'm sorry to interrupt you. Well, why does saying it's not a record under NVRA mean the SVRL is not a record paper under Title III? Yeah. And why is that? Right. Under the NVRA, what the court saw as important was the language that defined the records that are required to be preserved and turned over. And that is the records concerning the implementation of programs and activities to ensure that the official voter lists are current and accurate. And because those, that concerning the implementation of programs and activities was doing a lot of the work in NAGO, and what the panel concluded was that that language would cover documents about how a state conducted list maintenance, but to not. I just want to make sure that you agree that one of the things that the court in NAGO said was the specific question here is whether a state voter list is a record concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters within the meaning of the NVRA. That's the only issue that was before them that they were deciding. Yes? Correct, Your Honor. And I think that does, though, illustrate because Congress put in a records provision into the NVRA that specified the scope of it. And just to go back to Your Honor's question about whether, you know, bellows could also support our argument, I think it does because what the federal government has requested is not just the state voter rules, but the unredacted state voter rules. But you would agree that one of the things that appeared to drive the NAGO decision was that this information was going to be publicly available and going to any member of the public who requested it. Certainly, Your Honor. And that's certainly a different, I mean, I understand your argument, but that's certainly a different category than the Attorney General of the United States. Right. And we don't dispute that. I think, though, the textual hook that was important to the court's analysis, which is the scope of the records that are covered by the NVRA, is still important because what the NVRA and HABA established together – and I see I'm out of time – but what they established together is a comprehensive statutory regime that governed the type of documents both to the public and to the private that would be available before civil enforcement or criminal enforcement action was taken.  Thank you, Kat. I wanted to just ask some information about the record. Is that okay? Of course. Would that be all right? Of course. Thank you. Are you able just to give us information about how California's SVRL is updated, the number of fields, how often it's updated? Do you delete whatever list that you have when you generate a new one or update it? Your Honor, so I will try to do the best with the information that I have. So in terms of the number of fields, I don't know the precise number of fields. I know in our answering brief, we provided the types of information that is contained in what is California's state voter registration list. It's a system called VoteCal. It contains information including the name, address, date of birth, party affiliation, prior registration status, prior voting status, driver's license and Social Security information. The way that local election officials sort of input information is through their own election management systems. So they have their own sort of software interface that interfaces with VoteCal itself. But and then I think Your Honor asked what happens when information is updated. This isn't in the record, but my understanding based on one of the responses that the Secretary of State provided about what happens with duplicate entries, which is that they are merged, that once they are merged, there's no way to unmerge them and know what was unmerged in the past. I think that's in the supplemental excerpts of record. That tends to suggest that while the database is being updated, there are no snapshots that are preserving the database for a version that may have existed yesterday or the day before. Do you have a record site for that or at least is it a declaration or what is that? It's in the supplemental excerpts of record. It was one of the Secretary's responses to the questions that the Attorney General had posed about what happened with our duplicate entries. It's, I don't have the record citation. I believe it may be SCR 98. That's fine. If it's a response to one of the Justice Department letters, that's enough. It is. It's in one of those that reflects that the duplicate entries are merged. Okay. So that's the extent of what you know about the updating and where the information comes from? It is, Your Honor. All right. Thank you. Thank you. I'm sorry. Did you have something you wanted to conclude with? I would say if you had that same question about the Privacy Act and whether the federal government could or the state could lawfully or, you know, properly decline an information request when the federal government had failed to adhere to a small one.  Feel free. Yeah. So I think the answer is yes. For two reasons. One is under the Privacy Act. The other has to do with the court's role in enforcing document requests. So under the Privacy Act itself, 552 A.G. and H. provide civil and criminal liability for willful and failure. It provides liability. Correct. There's not, you would agree that there's nothing in that statute which specifically governs whether if there is noncompliance, it means that a recipient can decline a request for documents from the Attorney General. Right. Well, it provides that it's improper under the Privacy Act, and that is related to the second. Well, it's not that the request is improper, right? Well, the collection or maintenance of the information would be improper. Yes, Your Honor. And then that goes to sort of the next point, which is under United States v. Powell and this court's precedence about subpoena enforcement requests, the federal government has to establish at least three things with respect to that document request. First, that it has the authority to make the request. Second, that it has followed all procedural requirements. And finally, that the requested information is relevant and material or germane to its lawful uses. And I think the failure to comply with the Privacy Act would fail both the authority and procedural requirements prongs of that analysis. Well, that's a helpful answer. I thank you. My guess would be that if you were going back to Judge Mendoza's question, that wouldn't be the one you would pick. No, I think we would, we would, we would, I think there are many, many children that are all favorites. But I think that if we were to go and have to pick one, I would start with the one that we started argument with. And with that, thank you, Your Honors. Thank you. Thank you, Your Honors, again, Abakana on behalf of the interveners. Among all these children, I think one problem that underlies all of it is that the government has had a really hard time keeping its story straight. The CRA that they now claim so obviously gives them the authority to seek these voter lists is not something they even recognized in their initial demands to the states, which cited only the NVRA and HAVA. What we've also seen throughout the government's case is this kind of evolving purpose. They've told us that the purpose is actually to oversee list maintenance. And then we learn in our merits- Does the NAACP have a favorite child here? You know, Your Honor, I agree with my, with my friend for the state of California, that the easiest way to do this is to affirm on the basis of the trial court found on the lack of the mismatch between any CRA-related purpose and any purpose that has anything to do with the list maintenance obligations, the record-keeping obligations of the states. But so no, Your Honor, but you can, you can affirm on the basis below, you can affirm on the text, and you know, you can look and see that there's a reason why one common theme that we're seeing around all of these is that the government itself is not entirely sure what its basis is. What exactly is its foothold in federal law? What exactly is its purpose? That keeps morphing from pleading to pleading. And what we've learned in just the last week in that OLC memo is that actually there might have been some entirely new and undisclosed purpose about immigration enforcement. That is not a purpose that was ever disclosed in the letters. So why did you argue come into possession in your brief? Well, we've argued come into possession as an alternative basis on the textual basis to affirm the district court below. Certainly the court could do it on the basis that the district court found, the lack of purpose and the lack of basis. But the court could also go to the textual provisions. And when it comes to the children that are, you know, the favorite children among... Do you have any concern about the textualist argument hampering civil rights enforcement in the future? Or what, why do you love that child more, the enlist maintenance purpose? To be clear, I'm not sure I do love that child more. I don't think I have a favorite child among all of them. What we were doing is calling to this court's attention all of the many bases that multiple courts across the country have used to strike down. There are many avenues and many reasons why what DOJ is trying to do here is fit a square peg in a round hole. That is true on the kind of plain text of the statute. It's true in the fundamental purposes of the statutes that they're trying to shoehorn into one another. And it's true based on the ultimate purpose that they've now told us is actually the one lurking behind all of this kind of attempt to find some, you know, in the, according to them in the many decades of different statutory regimes, somehow secretly lurking behind there is this awesome, unheralded, unforeseen power of the executive branch to essentially get at any number of documents and records and data files for essentially any purpose whatsoever. And the fact that we are here debating about where and how can you pin that down into statute in the case law, and the fact that they themselves can't pin them down indicates that it's really not there. And all that we ask this court to do is essentially just apply the letter of the law, hold them to the text of the actual statutes. The text of the statutes are clear about what they cover and that they demand a real purpose that is consistent with the CRA and a basis that is... And I didn't hear from the state's attorney. What are the key sections for your list maintenance argument? For our list maintenance argument, meaning?  What are the key sections? Of the NVRA, HAVA, Title III. What are the key sections? Well, I believe that the both, I mean... And was this argued before? Is this forfeited? Oh, this was... We have argued this at every stage, Your Honor. We have argued about the fact that the list maintenance obligations of both NVRA and HAVA are well beyond the scope of the documents that are contemplated by the CRA. And what I believe we heard my counsel, my friend on the other side, suggest today is that obviously those two things must mean something different. Obviously, they can't... It doesn't make sense for... But NAGO was decided April 28th of 2026. Yes, Your Honor. So to the extent you're relying on NAGO, that seems like a new argument. Well, NAGO, I think, reaffirms our point that NAGO specifically says that the NVRA, the public disclosure provision of the NVRA, does not require getting the actual lists themselves. And so while we... That's not our argument here. Our argument is actually a statute that's even farther afield from the HAVA, the CRA. Okay. Can I go back to my previous question? What are the key statutory sections? Well, we believe that the NVRA specifically says that the list maintenance obligations are required for... Sorry, the public disclosure provision that the DOJ specifically relied upon was the list maintenance obligations to decide whether or not there's been a reasonable program enforced. And that's the same discussion that the NAGO case does examine in the context of the NVRA. And here, what we have is the state... So concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. Correct, Your Honor. So if that exactly... If what the DOJ is telling us is that that is their purpose. Their purpose is to enforce NVRA and enforce HAVA. Both NVRA and HAVA have enforcement mechanisms built into them. They don't need to look backward in time some 60 plus years to some other provision that just doesn't map onto that. When we know about...  So if it's the NVRA public disclosure provision, what is the key provision in HAVA? I believe... I don't have the statutory site at the ready, unfortunately, Your Honor, but I believe... But you don't have to give me the statute number. What is the text that you're saying is this very strong textual basis? What is it? Well, I believe that we've already discussed how the HAVA specifically requires updating, continually updating from a number of every local election officials down the line to constantly be updating in real time this data file. That is fundamentally at odds with the requirement in CRA that you preserve these records. You freeze them in time. You freeze them in time for a certain period of time. That is exactly the opposite of what HAVA actually demands upon the states. And I think all we've heard from the DOJ on that is that, well, you know, it can't possibly have that... Alter can't possibly mean alter in that sense, but there's no other mens rea requirement other than willfully. It just means that you have to do that intentionally. There's no requirement that it needs to be done maliciously. It just shows that the fact that even the United States is understanding that those two things can't be read together in a way that actually is the common meaning of the word alter indicates that it actually can't be read together at all. All right. Thank you, Counsel. Thank you, Your Honors. Before you start your rebuttal, I will just note in case any of you are ever arguing in the future, the correct pronunciation of the defendant's name in the case you're talking about is Nago. Thank you, Your Honors. So I would first like to emphasize my wholehearted agreement with my friend from the NAACP that this court should absolutely apply the letter of the law. And we think that that leads to only one result. I'm going to really quickly touch on three points. The first is basis, the second is purpose, and the third is the OLC opinion. With regard to purpose, the statute does not provide any limitation on what a permissible purpose would be. That is in stark contrast to all of the investigative statutes that are cited in the various cases my friends rely on, as well as that are relied on in cases like Powell or this court's decisions in Children's Hospital or Action Recycling, all of which list particular purposes which are permissible. The second is basis. The district court below seemed to think that the statements of basis and purpose issued in the 1960s were absolutely on point and above board, and we fully agree. And every single one of my friends agrees as well. NAACP says that there was without question sufficient basis. The legal women voter says it was self-evident. But I would invite this court to look at footnote 6 of Lind, which explains, in quotes, what that statement of basis and purpose was. It was extremely bare bones. The attorney general said that he had information in his possession suggesting that there was discrimination on the basis of race. That is it. There was no elaboration. There were no further facts. And that was not unique. If you look at footnote 5, that same statement was issued to another jurisdiction. If you look at the cases cited at pages 18 to 19 of our brief, numerous other cases had that exact same cut-and-paste job. And that's because the minimum showing here really is minimal, and we absolutely satisfied it with our letters here. And that is a really important thing to consider when looking at what the district court here instead required, which is that we allege that the information was both necessary and that we allege specific and articulable facts showing violations of the NVRA. But neither of those things can be squared with this court's decisions in the administrative subpoena context. Now, we think that those decisions are not quite on point because the CRA is so clear as to our right to these particular documents. But just consider this court's in-bank decision in Children's Hospital, or cases following it like Action Recycling, where this court has said that the purpose of an administrative subpoena is not to accuse. It is to inquire. It can be used simply to dissipate concerns of wrongdoing. It therefore makes no sense to require specific articulable facts showing wrongdoing. And furthermore, the relevance requirement gives the agency a very wide berth, as this court said in cases like Karuk Tribe Housing Authority. So wait, Colin. Wait, wait. Are you saying you're not going to say a factual basis? We have accepted for purposes of appeal that there needs to be a factual basis stated, but we do think it is satisfied by the statement in cases like Lind that says there are facts in our possession showing what we believe to be a violation of the law. And in our first letter, July 10, there was certainly more than that. And then the other thing that I would say on this point is that – oh, I'm sorry. I see them out of time, Your Honor. All right. Why don't you quickly conclude? Thank you. The other thing that I was going to say on that is that agencies get a wide berth in explaining what is relevant. It has to be not plainly incompetent. And if I may, just the OLC opinion, which has been stressed, is really unremarkable. What we did as a law enforcement agency is get guidance as to what to do if we find evidence of voter fraud in our investigation of the SVRLs. It does not belie some sort of hidden motive that we've been keeping from the courts this whole time. What we said at footnote 8 of our brief regarding our intent is absolutely true, and I stand by it today. All right. Thank you. We thank counsel for their arguments. The case just argued is submitted, and with that, we are adjourned for the day. All rise.
judges: BENNETT, KOH, MENDOZA